# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD D. ASHFORD,<br><br>       Plaintiff,<br><br>   v.<br><br>DR. JEFFREY NEUBARTH, M.D.,<br><br>       Defendant.<br>_____/ | CASE NO. 1:04-cv-06120-LJO-NEW (DLB) PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Doc. 50) |

I.   Findings and Recommendations Addressing Defendant's Motion for Summary Judgment

   A.   Procedural History

Plaintiff Edward D. Ashford ("plaintiff") is a prisoner proceeding pro se and in forma pauperis in this tort action filed on August 17, 2004. This is a diversity action, and is proceeding against defendant Jeffrey Neubarth, M.D. ("defendant") for medical malpractice, or negligence, in violation of California law. (Doc. 23.) Defendant filed a motion for summary judgment on September 7, 2006. (Doc. 50.) Plaintiff filed an opposition on December 8, 2006,[1] and defendant filed a reply and an objection to plaintiff's evidence on January 22, 2007. (Docs. 55-58, 62-63.)

   B.   Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on June 10, 2005. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 31.)

1

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

1 trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

C.   Undisputed Facts[2]

1.   Plaintiff was at all times relevant an inmate incarcerated at the California Department of Corrections and Rehabilitation ("CDCR"), Pleasant Valley State Prison ("PVSP"), Coalinga,

---

[2] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those facts that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial." Local Rule 56-260(b). In this instance, plaintiff did not comply with the Local Rule. Therefore, defendant's Statement of Undisputed Facts is accepted as true except where brought into dispute by plaintiff's verified complaint and declaration. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). Plaintiff's complaint and declaration are treated as opposing affidavits only to the extent that they set forth admissible facts within plaintiff's personal knowledge and not based merely on plaintiff's belief, and to which plaintiff is competent to testify. Johnson, 134 F.3d at 1399-1400; McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985). Because plaintiff is not qualified to render an opinion regarding his medical diagnosis or the appropriate course of treatment, plaintiff's complaint and declaration are not sufficient to create a disputed issue of fact with respect to those issues.

1     California.

2  2.     Defendant is licensed by the Medical Board of California as a medical doctor. At all times
3     relevant, defendant was employed at PVSP, and is currently employed at California State
4     Prison, Corcoran.

5  3.     Plaintiff has extensive keloids (scar tissue) on the left side of his face to his ear and neck
6     area. There are no abnormalities to his ear canal.

7  4.     In defendant and Dr. Kushner's opinions, based on their examination of plaintiff, plaintiff
8     suffers no significant hearing loss, and has no hearing disabilities. Plaintiff had no evidence
9     of fluid accumulation during examinations with defendant.

10  5.     Plaintiff was examined on April 2, 2003, regarding removal of keloid scar tissue. Defendant
11     explained to plaintiff that CDCR would not cover the procedure as it was considered
12     cosmetic.

13  6.     On June 10, 2003, plaintiff was seen by Dr. Salazar regarding removal of keloid scar tissue,
14     and was again informed that CDCR did not cover cosmetic procedures.

15  7.     On April 16, 2004, plaintiff was examined by Dr. Kushner, who requested an Ear, Nose and
16     Throat ("ENT") consultation for evaluation of left ear canal and keloid scars.

17  8.     Plaintiff's ENT consult request was reviewed, and denied by the Medical Authorization
18     Review ("MAR") Committee because there was no medical necessity for the consult and it
19     was considered cosmetic only.

20  9.     A formal letter denying the procedure was prepared by the MAR Committee on April 22,
21     2004.

22  10.     The MAR Committee determined the procedure involving removal of the keloids to be a
23     cosmetic procedure pursuant to CDCR's medical guidelines.

24  ///
25  ///

      D.    <u>Plaintiff's Medical Malpractice Claim</u>[3]

In his complaint, plaintiff alleges that he was stabbed in his left ear on November 16, 2001, while in the custody of the Bureau of Prisons at the United States Penitentiary-Beaumont in Texas. (Doc. 1, ¶4.) Plaintiff alleges that several palsy nerves were severed, causing 87% left facial paralysis, and a proliferation of scar tissue resulted, blocking the ear canal and affecting plaintiff's hearing. (<u>Id</u>.) Plaintiff alleges that in 2002, physicians determined that the scar tissue needed to be removed due to a proliferation of progressive thickening skin in plaintiff's left external auditory canal affecting plaintiff's hearing and a continuous accumulation of fluid in the canal, which might potentially lead to irreparable deterioration and injury. (<u>Id</u>., ¶5.)

Plaintiff alleges that on January 28, 2003, he was transferred to PVSP and subsequently saw defendant regarding surgical removal of the scar tissue from his left external auditory canal and removal of fluid accumulation. (<u>Id</u>., ¶¶8, 9.) Plaintiff was informed that the surgery was cosmetic and would not be performed or approved. (<u>Id</u>., ¶9.) Plaintiff again saw defendant and requested the extraction of fluid from his ear. (<u>Id</u>., ¶10.) Plaintiff alleges that defendant told him unless the scar tissue and fluid were removed, plaintiff would likely sustain permanent damage to his hearing, ear canal, and temporal lobes, and said that "if plaintiff wanted the surgery done he had 'better get the feds to take you back because as long as I am here, I don't give a fuck who is paying the bill nothing is getting done to that ear Mr. Ashford not on my watch.'" (<u>Id</u>., ¶10.) When plaintiff asked about removal of the fluid accumulation, defendant allegedly told plaintiff he was not plaintiff's personal vacuum cleaner. (<u>Id</u>.)

In a medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."

---

[3] Plaintiff alleges claims for medical malpractice and gross medical negligence. There is no separate, recognized cause of action for "gross negligence." <u>Allen v. Woodford</u>, Nos. 1:05-CV-01104-OWW-LJO, 1:05-CV-01282-OWW-WMW, 2006 WL 3762053, *15 (E.D. Cal. Dec. 20, 2006) (citing <u>Continental Ins. Co. v. American Prot. Indust.</u>, 197 Cal.App.3d 322, 329, 242 Cal.Rprt. 784, 788 (1987)). Accordingly, this action is treated as one for medical malpractice, or medical negligence.

5

Tortorella v. Castro, 140 Cal.App.4th 1, 3 n.2 (2006); Hanson v. Grode, 76 Cal.App.4th 601, 606 (1999). "The standard of care in a medical malpractice case requires that medical service providers exercise that . . . degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal.4th 101, 108 (Cal. 1999); Landeros v. Flood, 17 Cal.3d.399, 408 (1976). "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts,' expert testimony is required to prove or disprove that the defendant performed in accordance with the standard prevailing of care unless the negligence is obvious to a layperson." Johnson v. Superior Court, 143 Cal.App.4th 297, 305 (2006); see Flowers v. Torrance Mem'l Hosp. Medical Ctr., 8 Cal.4th 992, 1001 (Cal. 1994); Landeros, 17 Cal.3d at 410. When a defendant supports a motion for summary judgment with expert testimony that his conduct fell within the community standard of care, the failure of a plaintiff to present conflicting expert opinion is fatal to the plaintiff's medical malpractice claim. See Hutchinson v. United States, 838 F.2d 390, 392-93 (9th Cir. 1988); Hanson, 76 Cal.App.4th at 607; Jambazian v. Borden, 25 Cal.App.4th 836, 844 (1994); Willard v. Hagemeister, 121 Cal.App.3d 406, 412 (1981).

Defendant submits evidence that plaintiff has extensive scar tissue on the left side of his face to his ear and neck area, but no abnormalities to his ear canal. (Undisputed Fact 3.) Based on their examination of plaintiff, it was the opinion of defendant and Dr. Kushner that plaintiff suffers no significant hearing loss, and has no hearing disabilities, and during examinations with defendant, there was no evidence of fluid accumulation. (U.F. 4.)

On April 2, 2003, plaintiff was examined regarding removal of keloid scar tissue, and informed by defendant that CDCR would not cover the procedure as it was considered cosmetic. (U.F. 5.) On June 10, 2003, plaintiff was seen by Dr. Salazar regarding removal of keloid scar tissue, and was again informed that CDCR did not cover cosmetic procedures. (U.F. 6.) On April 16, 2004, plaintiff was examined by Dr. Kushner, who requested an ENT consultation for evaluation of left ear canal and keloid scars. (U.F. 7.) Plaintiff's ENT consult request was reviewed and denied by the MAR Committee because pursuant to CDCR's medical guidelines, there was no medical necessity for the consult and it was considered cosmetic only. (U.F. 8.) Defendant presents his own

1  expert opinion and Dr. Kushner's expert opinion that the treatment of plaintiff was within the
2  community standard of care. (Doc. 50, Neubarth Dec., ¶11; Kushner Dec., ¶10.)
3      Plaintiff has not submitted any admissible evidence bringing these facts into dispute. As a
4  lay witness, plaintiff may testify that he was stabbed in his ear, that he sustained scarring as a result
5  of the stabbing, and that he had difficulty hearing. However, because plaintiff is not a medical
6  expert, plaintiff may not interpret medical records, and plaintiff may not offer his lay opinion
7  regarding what medical conditions did or did not result from the stabbing, that there was a medical
8  need for surgery, that he had fluid in his ears, or that his difficulty in hearing was the result of scar
9  tissue or fluid accumulation. Therefore, the allegations set forth in plaintiff's complaint and
10 plaintiff's declaration submitted in support of plaintiff's opposition cannot be used to raise any
11 triable issues of fact with respect to those issues. Plaintiff has not presented any expert opinion that
12 the care he was provided with did not fall within the community standard of care. As a result,
13 plaintiff's claim against defendant fails as a matter of law.
14     Plaintiff's argument that he need not submit expert testimony where, as here, "negligence on
15 the part of the doctor is demonstrated by facts which can be evaluated by resort to common
16 knowledge . . . ," Ewing v. Northridge Hosp. Med. Ctr., 120 Cal.App.4th 1289, 1302 (Cal. Ct. App.
17 2004), is inapposite. This exception is "rare" and applies where "scientific enlightenment is not
18 essential for the determination of an obvious fact." Id. Examples of its application include a foreign
19 object "left in a patient's body following surgery," "an injury . . . to a body part not slated for medical
20 treatment," and "the amputation of a wrong limb." Id. at 1302-03 (citations omitted). The alleged
21 medical consequences stemming from the stab wound to plaintiff's ear (e.g., hearing loss and fluid
22 accumulation), and plaintiff's alleged need for surgery are not "familiar to a lay person," id. at 1303,
23 and the common knowledge exception does not apply in this case.
24     E.   Conclusion
25     Plaintiff failed to submit admissible evidence raising a triable issue of fact and defendant is
26 therefore entitled to summary judgment. Accordingly, for the reasons set forth herein, it is HEREBY
27 RECOMMENDED that defendant's motion for summary judgment, filed September 7, 2006, be
28 GRANTED, thus concluding this matter in its entirety.

1  These Findings and Recommendations will be submitted to the United States District Judge
2  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30)**
3  **days** after being served with these Findings and Recommendations, the parties may file written
4  objections with the court.  The document should be captioned "Objections to Magistrate Judge's
5  Findings and Recommendations."  The parties are advised that failure to file objections within the
6  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d
7  1153 (9th Cir. 1991).

9  IT IS SO ORDERED.
10 Dated:   **April 11, 2007**                    /s/ **Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE